**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

DEVON CHARLTON,

      **Plaintiff,**

v.

ILLINOIS DEPARTMENT OF
CORRECTIONS, LATOYA HUGHES,
JEREMIAH BROWN, MARCIE
BURTON, JANE DOE MAILROOM
SUPERVISOR, and MS. SCHUCH,

      **Defendants.**

Case No. 26-cv-298-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Devon Charlton, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Charlton alleges that he was denied access to hardback books received through the prison mail, in violation of the First Amendment.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

1

## The Complaint

Charlton was originally incarcerated at the Cook County Department of Corrections (Doc. 1, p. 46). While at Cook County, he was not allowed to receive hardback books, but he could receive the books if the sender removed the hardback or the mail staff removed the hardback with permission of the inmate (*Id*.). Charlton had several coverless books prior to his transfer to the Illinois Department of Corrections ("IDOC"). Prior to his sentencing, he sent much of his property home but still maintained some coverless books (*Id*.).

After his sentencing in May 2023, Charlton transferred to IDOC's Northern Reception Center (Doc. 1, p. 46). His property, including his coverless books, were inspected by prison officials, and he was allowed to keep the books (*Id*.). In June 2023, Charlton transferred to Lawrence Correctional Center (*Id*.). He was still allowed to keep his coverless books and received additional hardcover books through the mail (*Id*. at pp. 46-47).

In January 2025, Warden Jeremiah Brown issued a new policy for the receipt of reading materials through the mail (Doc. 1, p. 47). The new policy stated that for the safety and security of the prison, IDOC would now prohibit the receipt of hardback books (*Id*.). Around the time that the policy was issued, Charlton had some of his coverless books shipped to him from family members (*Id*.). On February 11, 2025, Charlton received a notification from the prison mailroom indicating that his two coverless books were being rejected because they had been altered (*Id*.). Charlton alleges the items were legal books including books titled "The Winning Brief" and "How to Win Your Case" (*Id*.). Mailroom

2

Supervisor Jane Doe Ms. Schuch drafted the notification denying receipt of the books (*Id.*). The notification gave Charlton thirty days to either pay to return the books to the sender or have the books destroyed (*Id.*). Charlton maintains that the books were intact and in their original form except for the missing covers (*Id.*).

On February 14, 2025, Charlton submitted three request slips to Brown, Ms. Schuch, and his counselor inquiring as to why his books were rejected by the mailroom (Doc. 1, p. 47). Charlton also submitted a grievance about his books (*Id.* at p. 48). Charlton and Ms. Schuch exchanged numerous request slips. Ms. Schuch confirmed that the books were altered by the removal of their covers and thus violated prison policy (*Id.*). But Charlton maintains that Lawrence's handbook does not include a policy regarding coverless books (*Id.*). On March 5, 2025, he asked Ms. Schuch if she would photocopy the books at his expense (*Id.*). In an unsigned response, she noted that the mailroom could not photocopy books and suggested that he would need to obtain paperback versions (*Id.*).

On March 10, 2025, Charlton wrote to Warden Brown because he never received a response to his original letter (Doc. 1, p. 48). Charlton noted that once the covers of the hardback books were removed, the books posed no security risks. He also mentioned that many legal books were only published in hardback editions (*Id.*). On March 11, 2025, Warden Marcie Burton responded to Charlton's letter to Brown (*Id.*). She noted that hardcover books are not allowed in the institution. She further noted that once a hard cover is removed, it is considered altered, which is also prohibited (*Id.*). Charlton notes

3

that books, including adult magazines, can be altered for content and then approved for inmate viewing, but a hardback book could not be altered (*Id*. at pp. 48-49).

Charlton acknowledges that his family ordered new versions of the books, although he fails to indicate whether the versions were paperback or hardback editions (Doc. 1, p. 49). He notes that he does not recall if those books were ever received by the mailroom (*Id*.). On March 11, 2025, Charlton asked Ms. Schuch whether he could order the books directly from Amazon and have mailroom staff remove the covers (*Id*.). Charlton alleges that this would have resolved the safety and security concerns (*Id*.). Ms. Schuch again responded in an unsigned and undated response that the books would also be considered altered (*Id*.). She reiterated that inmates were only allowed paperback books (*Id*.). In light of the decision regarding hardback books, Charlton opted to have the two books sent to his family (*Id*.). On March 18, 2025, Charlton sent one final request to Ms. Schuch, seeking to confirm her name because her responses were always unsigned (*Id*.). He never received a response (*Id*.). In response to one of Charlton's grievances, his counselor indicated that the mailroom supervisor was Ms. Schuch (*Id*.).

Charlton contends that the policy prohibiting hardback books and books with altered covers prohibits many legal books from entering the prison (Doc. 1, p. 50). Charlton notes that he recently lost the appeal of his conviction and must now attack his conviction on his own (*Id*.). He notes the books that he sought were both guides on litigating cases. Although he acknowledges the prison has a law library, the prison is often on lockdown because it is a maximum-security facility (*Id*.). In 2025, inmates received tablets and have access to Fastcase Law Library app, but the app only provides

4

caselaw, rules, and statutes (*Id.* at p. 51). The app lacks legal guides. Charlton notes that the law books in the library are hardback and inmates can access those books. Charlton argues that the limit on books received through the mail is arbitrary and violates his rights (*Id.*).

## Preliminary Dismissals

Although Charlton identifies the Illinois Department of Corrections as a defendant, the agency is not a "person" amendable to suit under Section 1983 and is immune from suit based on the state's sovereign immunity. *See Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983"). Thus, the Illinois Department of Corrections is **DISMISSED** as a defendant. To the extent Charlton seeks to sue any of the other defendants in their "official" capacities, those claims are also **DISMISSED** because officials acting in their official capacities are also not persons under the statute. *Will*, 491 U.S. at 71.

Charlton identifies both Jane Doe Mailroom Supervisor and Ms. Schuch as defendants but states his belief that the Jane Doe Supervisor is Ms. Schuch. Because Jane Doe and Ms. Schuch are presumed to be the same person, the Court **DISMISSES** Jane Doe Supervisor as a defendant. The claim will proceed against Ms. Schuch.

## Discussion

Based on the allegations in the Complaint, the Court designates the following count:

> **Count 1:** **First Amendment claim against Latoya Hughes, Jeremiah Brown, Marcie Burton, and Ms. Schuch for implementing a policy which prevents Charlton from accessing hardback books and/or coverless books.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

Charlton alleges that the blanket ban on hardback books, as well as books that were previously hardback but have since had their covers removed, violates his rights (Doc. 1, p. 50). "[T]he arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988)). *See also King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005) (the First Amendment protects the freedom to read as well as to speak). Further factual development will be necessary to determine whether the practice of rejecting Charlton's books based on their binding "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Thus, Count 1 shall proceed.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

## Motion for Counsel

Also pending before the Court is Charlton's motion for counsel (Doc. 3). Charlton notes that he is a college graduate, but this is his first lawsuit and performing depositions, research, and obtaining witnesses will be difficult. But given the early stages of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 846 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] There is nothing currently pending that would require counsel. Once Defendants have filed an Answer, the Court will enter a scheduling order explaining the next steps in the litigation process. If Charlton has difficulties in litigating his case at that time, he may resubmit his request for counsel. At this time, counsel is not needed, and his motion is **DENIED**.

## Disposition

For the reasons stated above, Count 1 shall proceed against Latoya Hughes, Jeremiah Brown, Marcie Burton, and Ms. Schuch. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Latoya Hughes, Jeremiah Brown, Marcie Burton, and Ms. Schuch: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

7

mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Charlton. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Charlton, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Charlton, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Charlton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court

8

will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

  **IT IS SO ORDERED.**

  **DATED:  June 23, 2026**

               _____
               **NANCY J. ROSENSTENGEL**
               **United States District Judge**

## Notice to Plaintiff

  The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**